# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| REGINALD BALLARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15 C 5069 |
| v. ) | |
| ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting ) | Maria Valdez |
| Commissioner of the U.S. Social ) | |
| Security Administration[1], ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff Reginald Ballard's ("Plaintiff") claims for Disability Insurance Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 13] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 23] is granted.

## BACKGROUND

### I. PROCEDURAL HISTORY

On April 10, 2012, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability since January 28, 2012. (R.188–96.) The claim was denied initially and upon reconsideration, after which he timely requested a hearing before

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

an Administrative Law Judge ("ALJ"). (R. 96–99, 102–04, 112–13.) The hearing was held on February 4, 2014. (*Id.*) Plaintiff personally appeared and testified at the hearing and was represented by counsel. (R. 30–76.) Vocational Expert ("VE") Thomas Upton also testified. (R. 30–76.)

On February 27, 2014, the ALJ denied Plaintiff's claim for Disability Insurance Benefits, finding him not disabled under the Social Security Act. (R. 11–29.) The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005) (R. 1–6.)

## II. FACTUAL BACKGROUND[2]

Plaintiff was born on November 17, 1960, and was fifty-three years old at the time of the ALJ hearing. (R. 30, 190.) He has his high school diploma. (R. 45.) Plaintiff was last employed as a print operator, but stopped working in December 2011 after he fell off a ladder while on duty. (R. 35, 340.)

### A. Medical Evidence

As an initial matter, the record contains medical evidence for treatment that occurred prior to Plaintiff's injury at issue in the present case. In August 2010, Plaintiff injured his back at work after climbing inside of a machine that required repair. (R. 500.) Following the incident he experienced sharp low back pain that travelled to his left leg and knee, prompting him to see Scott Fladland, D.C., who

---

[2] The following facts from the parties' briefs are undisputed unless otherwise noted.

2

designed a treatment plan to help return Plaintiff to his full work duties. (R. 500–01.) Dr. Fladland's treated the Plaintiff until October 2010. (R. 500–59.)

Over one year later, on December 14, 2011, Plaintiff was injured again when a ladder he was standing on at work slipped out from beneath him, causing him to twist his body and fall to the ground. (R. 340, 350.) Immediately after the incident, Plaintiff experienced the onset of sharp and severe low back pain accompanied by numbness and tingling in his left toes – symptoms he had not experienced with his prior back issues. (R. 340.) He declined to visit a doctor or a hospital on the date of the injury. (R. 350.)

The first doctor of record to examine Plaintiff following his injury was Lawrence Okafor, M.D., whom Plaintiff presented to on February 2, 2012. (R. 1108.) Dr. Okafor provided Plaintiff with a note which opined that he had been unable to work since January 29, 2012 and would remain unable to work until February 9, 2012. (R. 1107, 1109–10.) Due to residual back pain from his fall, Plaintiff continued his treatment relationship with Dr. Okafor through October 2012, resulting in six more visits. (R. 1089–106.) Typically, Dr. Okafor treated him with medication. (*Id.*)

Shortly after his initial appointment with Dr. Okafor, Plaintiff returned to Scott Fladland, D.C., complaining of low back pain that radiated to his lower left extremity. (R. 350, 636–39.) On February 20, 2012, Dr. Fladland ordered an MRI of Plaintiff's lumbar spine which revealed visible spinal changes, including central

3

canal stenosis[3] with bilateral foraminal stenosis. (R. 356, 637.) Following his appointment, Dr. Fladland provided Plaintiff with a note removing him from his work duties for six weeks. (R. 404, 637.)

In the following months, Dr. Fladland frequently treated Plaintiff with trigger point therapy, chiropractic adjustments, rehabilitative exercises, and electrical muscle stimulations to help return him to his full work duties. (R. 573–607, 613–22.) The treatment relationship lasted from the end of February 2012 to May 2012, during which time Dr. Fladland continually provided Plaintiff with notes extending his leave from work. (R. 385, 392, 404, 573, 677, 686.)

Next, on May 9, 2012, Plaintiff was seen for a surgical consultation by Kern Singh, M.D., at the behest of Dr. Fladland. (R. 352–54.) After examining Plaintiff,[4] Dr. Singh recommended that he undergo a minimally invasive laminectomy and transforaminal lumbar interbody fusion.[5] (R. 354.) In a form he sent to Dr. Fladland, Dr. Singh opined that Plaintiff was unable to work. (R. 386–87.)

On June 6, 2012, Plaintiff presented to Steven Mash, M.D., for an Independent Medical Examination. (R. 1251–56.) Aside from tenderness upon palpitation in Plaintiff's lower back, Dr. Mash's examination revealed normal results. (R. 1252–53.) Dr. Mash first opined that Plaintiff's condition was not

---

[3] Stenosis is "an abnormal narrowing of a duct or canal." *Dorland's Medical Dictionary* www.dorlands.com (last visited February 7, 2017.) [hereinafter *Dorland's*].
[4] Dr. Singh diagnosed Plaintiff with L4-L5 degenerative facet arthropathy and stenosis and spondylolisthesis. (R. 353.) Spondylolisthesis is "forward displacement (olisthy) of one vertebra over another, usually of the fifth lumbar over the body of the sacrum, or of the fourth lumbar over the fifth." *Dorland's*.
[5] Plaintiff was scheduled to undergo surgery on May 22, 2012, but the procedure was postponed by Plaintiff's employer so that a second opinion regarding the surgery could be obtained. (R. 1039.)

4

related to his December 2011 injury, but rather his symptoms were a temporary exaggeration of his previously diagnosed condition. (R. 1255.) Due to this finding, he stated that the surgery recommended by Dr. Singh was reasonable, but that Plaintiff "would be able to return to work only in a position which would not require any significant lifting, pushing, or pulling with a [ten] pound lifting restriction." (*Id.*) Dr. Mash concluded his note by stating that the treatment he indicated was not related to Plaintiff's workplace injury. (*Id.*)

Finally, Plaintiff's medical records were reviewed on August 23, 2012 by Richard Lee Smith, M.D., a state agency consultant. (R. 77–84.) Due to Plaintiff's back pain, Dr. Smith found that he was limited to occasionally climbing ramps, stairs, ladders, ropes, and scaffolds, and occasionally stooping, kneeling, crouching, and crawling. (R. 81.) Ultimately, he opined that Plaintiff was not disabled. (R. 83.) On February 20, 2013, another state agency consultant, Michael Nenaber, M.D., reviewed Plaintiff's medical records and performed a second consultative examination. (R. 86–95.) Dr. Nenaber confirmed Dr. Smith's findings. (R. 91.)

### B.   Plaintiff's Testimony

Plaintiff testified that he last worked as a print operator where his job duties included assembling and maintaining a conveyor belt machine. (R. 35, 44.) His daily tasks included building palates, lifting/carrying fifty-pound boxes of materials, and installing parts on the machine. (R. 43–45.) These tasks required him to frequently squat, stand, bend, lift, and carry. (R. 45–46.) Plaintiff stopped working after his injury due to the severity of his pain. (R. 35.) He testified that the accident not only

5

aggravated his pre-existing back problems, but that he began to experience new symptoms including low back pain that tingled and throbbed down his legs through to his feet, causing him stiffness, numbness, and difficultly walking. (R. 47, 49.) To help reduce the pain, he takes pain medications which sometimes cause him to feel drowsy. (R. 53.) He testified his most recent doctor's appointment was three weeks before the hearing. (R. 35.)

### C.  Vocational Expert Testimony

A vocational expert ("VE") was also present via teleconference and testified at the hearing. (R. 33, 66.) The ALJ asked the VE whether a hypothetical individual with Plaintiff's same age, education, and work experience, who retained a residual functional capacity ("RFC") to perform light work limited to: occasionally climbing ramps and stairs, but never climbing ladders, ropes, and scaffolds; frequently balancing; and occasionally stooping, kneeling, crouching, and crawling could perform Plaintiff's past relevant work. (R. 67–68.) The VE testified that the hypothetical individual could not perform Plaintiff's past relevant work, but that other jobs would be available to such an individual, such as a cashier, inspector and packer, and lamp tester. (R. 68–69.) The ALJ then asked the VE whether there would be jobs available for an individual of Plaintiff's same age, education, and work experience with a light RFC, who was limited to: occasionally climbing ramps and stairs, but never climbing ladders, ropes, and scaffolds; occasionally balancing, stooping, kneeling, crouching, and crawling; frequently reaching in all directions, handling, and fingering with both upper extremities; and occasional exposure to

extreme cold and heat, wetness, humidity, vibration, and hazards such as moving machinery or unprotected heights. (R. 69.) This individual could also perform unskilled work tasks that were simple, repetitive, and routine in nature and could be learned by demonstration in thirty days or less. (*Id.*) The VE opined that the additional limitations would not impact the availability of the jobs he had previously listed. (R. 70.)

On cross-examination, Plaintiff's counsel asked the VE whether an individual who required a one hour break per work day due to drowsiness caused by pain medication would be precluded from the jobs he had previously listed. (R. 71–72.) The VE stated that such a limitation would preclude an individual from employment. (R. 72.) Additionally, he opined that an individual would need to be on task eighty-five to ninety percent of the workday to sustain and maintain competitive employment. (R. 72.)

### D.  ALJ Decision

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 28, 2012. (R. 16.) At step two, the ALJ concluded that Plaintiff had severe impairments of obesity, diabetes mellitus, and degenerative disc disease. (*Id.*) The ALJ concluded at step three that the impairments, alone or in combination, do not meet or medically equal a Listing. (R. 17.) The ALJ then determined that Plaintiff retained the RFC to perform light work, with the following limitations: he could occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; occasionally balance, stoop, knee, crouch, and

7

crawl; frequently reach in all directions, including overhead, with both upper extremities; frequently handle and finger with both up extremities and constantly feel with both upper extremities; tolerate occasional exposure to cold and heat, wetness, humidity, vibrations, and hazards such as moving machinery and unprotected heights; and perform unskilled work tasks that could be learned by demonstration in thirty days or less of a simple, repetitive, and routine nature. (R. 18.) The ALJ concluded at step four that Plaintiff could not perform his past relevant work. (R. 22.) At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act. (R. 24.)

In making her decision, the ALJ gave great weight to the opinions of the state agency consultants who opined that Plaintiff was not disabled. (R. 22.) Specifically she found their opinions were "supported by [Plaintiff's] ongoing conservative treatment." (*Id.*) Conversely, she gave little weight to the opinions of Dr. Mash, the independent medical examiner, and no weight to the opinions of Drs. Okafor and Singh. (R. 21.)

The ALJ first discounted the work limitations articulated by Dr. Mash because she did not find other support in the record to restrict Plaintiff to sedentary work or lifting ten pounds. (R. 21.) Instead, she opined, the medical evidence and clinical findings revealed Plaintiff' was consistently within normal limits on his examinations. (*Id.*) She also discredited Dr. Mash's limitations because they

8

appeared to be based on Dr. Singh's surgical recommendation rather than Plaintiff's workplace injury. (*Id.*) Likewise, the ALJ gave no weight to Dr. Singh's opinion that Plaintiff was unable to work because she found it was similarly predicated on Plaintiff's potential surgical intervention and that it lacked enough specific details to support a disabled status. (R. 22.)

Next, the ALJ dispensed with Dr. Okafor's note that opined Plaintiff was unable to work from January 29 to February 9, 2012. (R. 21.) The ALJ found his opinion to be conclusory and unsupported by any functional analysis or explanation. (*Id.*) Finally, the ALJ discounted Dr. Fladland's notes which continually extended Plaintiff's leave from work because, as a chiropractor, he was not an acceptable medical source for disability purposes. (R. 22.)

## **DISCUSSION**

### I.     **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former

9

occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps 1–4. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.  JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the

ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported.") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "[s]he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate h[er] analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors h[er] ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

11

## III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error because: (1) the ALJ improperly weighed the opinions of Plaintiff's medical sources and (2) the hypothetical questions the ALJ posed to the VE did not reasonably account for all of his alleged limitations. (Pl.'s Br. at 4–6.)

### A. Plaintiff's Argument Regarding His Treating Physicians is Undeveloped.

First, Plaintiff argues that the ALJ failed to properly weigh the opinions of four medical sources in the record: (1) Steven Mash, M.D.; (2) Lawrence Okafor, M.D.; (3) Scott Fladland, D.C.; and (4) Kern Singh, M.D. When making her disability determination, the ALJ gave great weight to the opinions of the non-examining state agency medical consultants who found that Plaintiff was not disabled. In his brief argument, Plaintiff seems to assert that the ALJ's reliance on the consultants' opinions was an impermissible example of cherry-picking.[6]

The Seventh Circuit has held that "undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1992); *Handford ex rel. I.H. v. Colvin*, No. 12 C 9173, 2014 U.S. Dist. LEXIS 3449, at *39 (N.D. Ill. 2014) (applying *Berkowitz* to reject underdeveloped arguments in a Social Security appeal). Moreover, "[i]t is the parties' responsibility to allege facts and indicate their relevance under the

---

[6] As an initial matter, the court notes that the ALJ articulated her consideration of both state agency consultants, Drs. Smith's and Nenaber's, opinions. (R. 22.) In his brief, Plaintiff refers to these physicians singularly. (Pl.'s Br. at 5.) Plaintiff's argument states that the medical consultant "has been hired by the Social Security Administration and is the only medical opinion the [ALJ] is willing to consider. This is clearly the [ALJ] giving credibility to limited evidence that supports her decision." (*Id.*)

correct legal standard." *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008) (citation omitted) (internal quotation marks omitted). Because Plaintiff offered no more than a "skeletal argument" stating that the ALJ improperly weighed the opinions of the medical sources in the record, his claim is waived. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.").

Plaintiff's argument contains no applicable legal authority or analysis of the issue. *Young v. Colvin*, No. 13 CV 50025, 2015 WL 1746154, at *5 (N.D. Ill. Apr. 16, 2015). In fact, Plaintiff fails to identify any evidence that supports his assertion or minimally articulate how the omission of such evidence impacted the ALJ's conclusions. Without more, Plaintiff's undeveloped contentions do not merit consideration, and thus constitute a waiver.

### B.   Plaintiff's Argument Regarding the Permissibility of the ALJ's Hypotheticals is Undeveloped

At step five, based on the testimony of the VE, the ALJ determined that Plaintiff was capable of performing work that was available in the national economy. Plaintiff argues that the ALJ's conclusion omitted other relevant testimony from the VE, specifically testimony where he opined that an individual who would be absent from work two or more days per month or off-task thirty percent[7] of the day, would be precluded from competitive employment. Plaintiff's

---

[7] In his testimony, the VE testified an individual who was off-task for greater than eighty-five to ninety percent of the work day would be excluded from competitive employment. (R. 72.) In his brief, Plaintiff mistakenly states that his counsel specifically cross-examined the VE about an individual who would be off-task thirty percent of the work day. (Pl.'s Br. at 6.)

13

argument to this point states that "it is clear from [his] testimony that he is off-task a considerable amount of time due to pain and often has to go to doctor's appointments which would increase his absences during any given month." (Pl.'s Br. at 6.) Using the case law previously articulated the court finds that Plaintiff's argument is undeveloped.

Plaintiff's "argument" is primarily a summary of the ALJ's decision and the VE's testimony, followed by a single sentence where he asserts that he would be ineligible for competitive employment. He does not cite to any legal authority for his assertions or provide specific facts to support his argument. Moreover, he fails to point to any part of his own testimony to bolster his argument, despite the statement in his brief where he asserts his testimony is demonstrative of his inability to work. For this reason, his claims on this point are undeveloped and are therefore waived.

Furthermore, even if Plaintiff had sufficiently articulated his argument, the evidence in the record does not support his assertions. First, Plaintiff claims that he would miss work several times per month due to frequent doctor's visits. (Pl.'s Br. at 6). However, Plaintiff's testimony reveals that his most recent appointment was three weeks prior to his hearing date. (R. 35.) This single presentation for treatment does not provide sufficient evidence to conclude he would be absent from work several times per month. Although Plaintiff does not point to the record to support his argument, the court will additionally consider its impact on Plaintiff's claims. The record contains four reports from Plaintiff's most recent treating physician,

Titilayo Abiona, M.D. dated July 10, September 30, November 1, and December 13, 2013. (R. 1257–85.) Much like Plaintiff's testimony, this medical evidence does not support his contention that he presents more than twice per month for doctor's visits. Indeed, Plaintiff routinely presented to Drs. Fladland and Okafor for medical care; however, those treatment relationships ended in May 2012 and October 2012, respectively. Similarly, those records are not persuasive evidence that Plaintiff would be absent from work two or more days per month. The court does not find, and Plaintiff does not point to, any other evidence that supports his assertion.

Plaintiff also failed to demonstrate that he would be off-task thirty percent of the day. Although Plaintiff testified he gets drowsy after taking his medications in the afternoon, no evidence in the record demonstrates that his fatigue impacts his ability to work. (R. 57.) Instead, the records indicate that Plaintiff often presented as alert and well-oriented at his doctor's visits. (R. 1045, 1064, 1083.) Therefore, the ALJ reasonably accounted for all of his credible limitations when she posed hypothetical questions to the VE. *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007.)

[Remainder of this page intentionally left blank]

## CONCLUSION

For the foregoing reasons, Plaintiff Ballard's motion for summary judgment [Doc. No. 13] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 23] is granted.

**SO ORDERED.**               **ENTERED:**

DATE:  **February 28, 2017**   _____
                                                  **HON. MARIA VALDEZ**
                                                  **United States Magistrate Judge**